(163 App. Div. 778)

PEOPLE ex rel. AMERICAN & FOREIGN MARINE INS. CO. OF NEW YORK v. SOHMER, State Comptroller. (No. 205-0.)

(Supreme Court, Appellate Division, Third Department. September 9, 1914.)

TAXATION (§ 537*)—CORPORATIONS—FRANCHISE TAX—ASSESSMENT—EXEMPTIONS—READJUSTMENT.

Tax Law (Consol. Laws, c. 60) § 190, prior to the amendment of April 24, 1913 (Laws 1913, c. 357), provided that plaintiff and certain other insurance companies were entitled to deductions from their franchise tax assessments on state bonds owned by them, bearing interest at not exceeding 3 per cent. of an amount equal to 1 per cent. of the par value of the bonds so held. On such date the section was amended, so as to increase the deduction to 1½ per cent. on all such bonds bearing interest at 3 per cent., but not exceeding 4 per cent. The amendment was repealed June 17, 1913 (Laws 1913, c. 794), but after it was passed, and before it was repealed, relator, having paid its tax in accordance with the prior law, though it was not bound to have made payment until after the amendment, applied to the comptroller for a readjustment, and for an additional credit of $1,000 to which it would have been entitled under the amended act. Held, that section 198 did not deprive the comptroller of authority to readjust the tax because it so happened that it was correct at the time it was paid, but conferred power to grant relief where the taxpayer was equitably entitled thereto, and that relator was entitled to have its assessment readjusted in accordance with the amendment.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 996–998; Dec. Dig. § 537.*]

Application for certiorari by the People, on relation of the American & Foreign Marine Insurance Company of New York, against William Sohmer, Comptroller of the State of New York, to review defendant's refusal to revise and readjust relator's franchise tax for the year 1913. Granted.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

William H. Hotchkiss, of New York City, for relator.

Thomas Carmody, Atty. Gen. (Joseph A. Kellogg, of Glens Falls, and Claude T. Dawes, of New York City, of counsel), for defendant.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

HOWARD, J.   The relator is a domestic insurance company. Under section 187 of the Tax Law (Consol. Laws, c. 60) it is now, and was in 1913, compelled to pay a franchise tax.   Under section 190 of the Tax Law, prior to April 24, 1913, certain insurance companies were entitled to certain deductions from their taxes in case they were the owners of state bonds bearing interest at a rate not exceeding 3 per cent.   The comptroller was required to credit them with an amount equal to 1 per cent. of the par value of all such bonds held by them; this credit to apply on the payment of their taxes. On April 24, 1913, by Laws 1913, c. 357, section 190 of the Tax Law was amended, so as to increase the amount of credit to which these companies were entitled by reason of holding these bonds, from 1 to 1½ per cent.   The amendment also required that these companies be given credit equal to one-half of 1 per cent. of the par value of all other state bonds held by them, bearing interest exceeding 3 per cent., but not exceeding 4 per cent.   The relator held $60,000 of registered 3 per cent. state bonds and $140,000 of 4 per cent. registered state bonds.   It paid its tax March 29th; it need not have paid it until June 1st.   The amendment was passed April 24th; it was repealed June 17th, by Laws 1913, c. 794.   It lived less than two months. After it was passed and before it was repealed, the relator applied to the comptroller for a readjustment of its tax and asked for an additional credit of $1,000, to which it claimed to be entitled under the amendment.   Acting on the advice of the Attorney General, the comptroller refused to make any readjustment or to give the relator the extra credit of $1,000.   The refusal of the comptroller was based solely upon his supposed lack of power, under section 198 of the Tax Law, to grant relief to the relator.   At the time the relator paid its tax it was not entitled to the $1,000 credit.   The amount paid included nothing except what could have been lawfully demanded at the time it was paid, and the comptroller considers himself bound down by section 198 of the Tax Law to grant relief only in those cases where the tax includes charges "which could not have been lawfully demanded" by him.

We believe this strict construction of section 198 to be narrow, unwarranted, and repugnant to justice and equality.   The purpose of the section is to empower the comptroller to grant relief where relief ought to be granted.   If the state has obtained money from the taxpayer which it ought to give back, under section 198 the comptroller must revise his books and accounts to the effect that the money may be returned to the rightful owner.   No strict reading of the section or technical construction of it should defeat this plain purpose of the law.   The comptroller recognizes that, had the relator delayed the payment of its tax until after April 24th, it would have been entitled to the $1,000 credit.   But, under the amendment, this credit is to be given irrespective of whether payment of the tax has been made.   Payment of the tax forms no obstacle to the credit. Because, by chance, the relator paid its tax promptly, that in no manner affects its rights under section 190 as amended.   Surely the law will not permit the relator to be punished for its promptness and

diligence. More than 20 companies entitled to credit just as the relator was, but no more so—companies slothful in the payment of their taxes—have been allowed these credits. Must the law be so construed as to allow these companies to profit by their sluggishness, while the relator for its promptitude must suffer loss? If the tardy companies were entitled to the credit provided for by the amendment to section 190, so also were the prompt companies. The comptroller should have acted upon this principle, for no canon of construction requires a statute to be so read as to work out inequality or injustice. After hearing an appeal, this court is empowered to do, not only what ought to have been done, but what ought to be done, in order to effect exact justice.

It only remains to determine whether any of the insurance companies were entitled to the credit. The amendment to section 190 of the Tax Law provides that every corporation which shall own state bonds of a certain character shall have credited to it annually, to apply upon or in lieu of the payment of its franchise tax, an additional amount to one-half of 1 per centum of the par value of all bonds of that character owned by such corporation on the 30th day of June, 1912. Shall have the additional one-half per cent. credited to it when? Immediately; that is to say, as soon as the law takes effect. The first annual credit must be made at once, for the law takes effect at once. This law was passed, perhaps, to create a demand for state bonds; but the additional credit was made to apply, by the terms of the amendment, not only to the bonds to be purchased in the future, but to those already held. The credit could have been limited to the future purchase of bonds; but it was not so limited. Why not is unaccountable. The Legislature soon regretted its unwisdom; it repented of its folly and hastened to repeal the law. But it was too late; it had reduced the relator's taxes; it had given away the money of the state. The courts cannot cure the improvidence of the Legislature. They must observe the law as much in their decisions as the citizen does in his transactions. The law was to take effect immediately. What was to be this immediate effect? The additional credit of one-half of 1 per cent.—there could be no other immediate effect. As soon as the law became a law, the companies were entitled to this credit. That was the effect intended; that was the effect which we must give it.

It follows that the writ of certiorari should be granted, and that the account of the relator for its franchise tax of 1913 be corrected by the comptroller so that the relator be given credit for $1,000. All concur; JOHN M. KELLOGG, J., in result.

JOHN M. KELLOGG, J. (concurring in result). The tax became due June 1st, and the relator's right to the credit must be determined as of that date. Section 190 of the Tax Law provides that the corporation, on account of the ownership of certain state bonds, shall have a stated amount "credited to it annually to apply upon or in lieu of the payment of such tax." This I think contemplates that the tax is to be stated and audited without reference to the credit.

and that the credit is to be allowed at the time of payment. If relator had sold the bonds before June 1st, it would not be entitled to a credit on account of them. The determination under review has allowed the relator certain credits which it is entitled to under section 190, but relator has not been allowed all the credit fairly due it. It, therefore, has paid the state a greater amount than it owed, and in some proper remedy is entitled to be reimbursed. If it had not paid its tax until it matured, the adjustment would have been easy. Having paid the tax before maturity, there may be some question about the right to review the statement of the tax by the comptroller on certiorari. Upon the argument the only question presented was whether the repeal deprived the relator of the right to the credit it claims. Under the circumstances, therefore, and in view of the stipulation filed, I concur in the result.